273 N.J. Super. 289 (1994)
641 A.2d 1085
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK PENNINGTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 1994.
Decided May 19, 1994.
*291 Before Judges MICHELS, SKILLMAN and KESTIN.
James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Acting Public Defender, attorney; Mr. Smith, of counsel and on the brief).
Susan W. Sciacca, Assistant Prosecutor, argued the cause for respondent (John J. Fahy, Bergen County Prosecutor, attorney; Ms. Sciacca, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was indicted for purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3a(1), (2); felony murder, in violation of N.J.S.A. 2C:11-3a(3); and possession of a weapon (a handgun) for an unlawful purpose, in violation of N.J.S.A. 2C:39-4a. The State elected to prosecute the charge of purposeful or knowing murder as a capital offense. See N.J.S.A. 2C:11-3c. A jury found defendant guilty of all charges. After a sentencing hearing, the jury also found that the aggravating capital sentencing factors clearly outweighed the mitigating and imposed the death penalty. The trial court then sentenced defendant to death in accordance *292 with the jury's verdict. The court merged defendant's convictions for felony murder and possession of a weapon for an unlawful purpose into his conviction for capital murder.
On appeal, the Supreme Court reversed defendant's conviction for capital murder because the trial court's instructions to the jury failed to distinguish between defendant purposely or knowingly causing death, in which event the jury could impose the death penalty, and defendant purposely or knowingly causing serious bodily injury resulting in death, in which event the death penalty could not be imposed. State v. Pennington, 119 N.J. 547, 560-65, 575 A.2d 816 (1990); see State v. Gerald, 113 N.J. 40, 549 A.2d 792 (1988). The Court concluded that in the absence of a jury determination as to which form of purposeful or knowing murder defendant had committed, "defendant may not be convicted of capital murder." State v. Pennington, supra, 119 N.J. at 560, 575 A.2d 816.
Although the Supreme Court reversed defendant's conviction for capital murder solely on the ground that the trial court's instructions failed to distinguish between capital and non-capital murder, the Court extensively reviewed "numerous instances of prosecutorial misconduct ... [t]o avoid problems on remand." Id. at 565, 575 A.2d 816; see id. at 565-84, 575 A.2d 816. The Court concluded that "the prosecutor, if he did not cross the line of impropriety, came perilously close to committing reversible error." Id. at 565, 575 A.2d 816. The Court, however, rejected all of defendant's other claims of error relating to the conduct of the trial's guilt-phase. Id. at 584-95, 575 A.2d 816. Accordingly, the Court reversed defendant's conviction for capital murder and remanded the matter to the Law Division.
After the remand, the State filed a motion with the Court seeking "clarification on the status of defendant's convictions for felony-murder and possession of a weapon for [an] unlawful purpose." In a letter brief submitted in support of this motion, the Attorney General stated:

*293 As the State understands it, a reversal under State v. Gerald, supra, would not vitiate defendant's other convictions. This Court found no other basis for reversal which would warrant a retrial on the felony-murder count and [the] possession of a weapon for [an] unlawful purpose count. Therefore, defendant's felony-murder conviction and his weapon conviction still stand. These two convictions, previously vacated, should be reinstated and a sentence imposed thereunder. The remand ordered by this Court in its opinion would only relate to the purposeful or knowing murder count.
The Court denied the State's motion for clarification, "without prejudice to a further appropriate application to this Court, within 10 days of the entry of the trial court's disposition of any application made to it in respect of the jury verdicts in this matter."
At the urging of the victim's family, which did not want to go through the ordeal of a second trial, the prosecutor determined not to retry defendant for capital murder. Consequently, the State entered into a plea bargain under which defendant agreed to plead guilty to purposeful or knowing murder in exchange for the State agreeing not to seek the death penalty but to instead recommend that defendant receive a sentence of thirty years to life imprisonment, with thirty years of parole ineligibility, to be served consecutively to a fifty year sentence, with twenty-five years of parole ineligibility, which defendant was then serving for another murder. However, when the defendant became disruptive during the court's consideration of the plea, the court granted the prosecutor's motion to withdraw the plea agreement.
The State subsequently filed a motion with the trial court to reinstate defendant's convictions for felony murder and possession of a weapon for an unlawful purpose, which had previously been merged into his conviction for capital murder. The State indicated that it would not retry defendant for purposeful or knowing murder if its motion were granted. The State acknowledged that the Supreme Court had not decided whether there were any trial errors which would require a reversal of defendant's convictions for felony murder and possession of a weapon for an unlawful purpose, and that consequently the trial court had to determine whether there was any such error before reinstating defendant's convictions.
*294 The trial court granted the State's motion. The court agreed with the State's contention that the Supreme Court had rejected all of defendant's claims of error relating to the trial's guilt phase, except for those relating to alleged instances of prosecutorial misconduct. In concluding that the prosecutor's misconduct did not prejudice defendant in regard to his convictions for felony murder and possession of a weapon for an unlawful purpose, the court stated:
In a case such as this one, with felony murder and possession of a firearm for an unlawful purpose conceded by the defense, all of the prosecutor's energies, and consequently his alleged excesses, were directed toward the capital murder conviction....
....
... Although the prosecutor may have used such emotion-laden language, a review of the record demonstrates that these comments were directed toward the capital murder count only.
....
... [T]his Court is of the unequivocal opinion that the prosecutor's behavior did not taint the felony murder and weapons counts....
The court further concluded that in the absence of any error requiring a retrial of the felony murder and possession of a weapon for an unlawful purpose charges, it could reinstate defendant's convictions for these offenses. The court then proceeded to sentence defendant to life imprisonment, with thirty years of parole ineligibility, for felony murder, to be served consecutively to any other sentences defendant was then serving. The court merged defendant's conviction for possession of a weapon for an unlawful purpose into his conviction for felony murder.
On appeal, defendant argues that the trial court had no authority to reinstate his conviction for felony murder. Defendant contends that if the State desired to have defendant's conviction for felony murder reinstated in the event his conviction for capital murder was reversed, it had an obligation to seek an affirmance of that conviction before the Supreme Court.
Defendant's notice of appeal filed with the Supreme Court only challenged his "final judgment of conviction of murder and sentence of death." Defendant's appellate arguments before the *295 Court were also directed solely at his conviction for purposeful or knowing murder and the consequent imposition of the death penalty. Likewise, the State's answering brief only responded to defendant's arguments and did not address defendant's conviction for felony murder. Consistent with the manner in which the parties presented the appeal, the Supreme Court only considered defendant's conviction for capital murder.
However, the trial court was not precluded from reinstating defendant's conviction for felony murder simply because the Supreme Court did not affirm that conviction in defendant's original appeal. Convictions merged for the purpose of sentencing are not extinguished. The doctrine of merger, as codified by N.J.S.A. 2C:1-8a, only serves to prevent "an accused [who] has committed ... one offense ... [from being] punished as if for two." State v. Cole, 120 N.J. 321, 325-26, 576 A.2d 864 (1990) (quoting State v. Miller, 108 N.J. 112, 116, 527 A.2d 1362 (1987)). Consequently, if an appellate court reverses a defendant's conviction for an offense into which the trial court has merged a lesser offense, the State may elect not to retry defendant for the greater offense and instead request the trial court to "unmerge" the lesser offense and sentence defendant thereon. State v. Brent, 265 N.J. Super. 577, 590, 628 A.2d 372 (App.Div.), certif. granted, 134 N.J. 563, 636 A.2d 520 (1993); cf. State v. Long, 119 N.J. 439, 504-05, 575 A.2d 435 (1990); State v. Crouch, 225 N.J. Super. 100, 106-07, 541 A.2d 1092 (App.Div. 1988). While it may be desirable from the standpoint of judicial efficiency for the parties to brief, and for the appellate court to pass upon, issues relating to the validity of a merged conviction if it appears that the State will not retry the defendant for the greater offense in the event of a reversal, cf. State v. Dixon, 125 N.J. 223, 228-29, 593 A.2d 266 (1991), this procedure is not required by either the Code of Criminal Justice or the Court Rules. Moreover, there inevitably will be cases in which both the defendant and the State assume that the defendant will be retried for the greater offense if that conviction is reversed on appeal, but where a subsequent change in circumstances leads *296 the prosecutor to decide that a retrial would not be in the public interest.
We also perceive no unfairness to the defendant if the trial court agrees to unmerge a lesser offense and to sentence defendant thereon rather than requiring the State to retry him for the greater offense. To be sure, this procedure may require the defendant to take an appeal from the judgment of conviction for the lesser offense in order to present any arguments relating solely to the validity of that conviction. However, such a second appeal generally will involve a lesser burden upon the defendant than would a retrial of the greater charge followed by an appeal in the event of another conviction. In any event, if a defendant wants to avoid the possibility of having to take a second appeal, he can raise in his original appeal whatever issues could result in a reversal of his conviction for the merged lesser offense. Since defendant chose not to present any arguments directly relating to his conviction for felony murder in his first appeal, defendant's opportunity for review of that conviction is provided by this appeal.
Defendant's only argument relating to his conviction for felony murder is that the prosecutor's misconduct denied him a fair trial.[1] As previously noted, the Supreme Court concluded that "the prosecutor, if he did not cross the line of impropriety, came perilously close to committing reversible error." 119 N.J. at 565, 575 A.2d 435. However, since defendant's conviction for capital murder was reversed on other grounds, the Court found it unnecessary to "determine the likelihood that the prosecutor's misconduct led to an unjust verdict." Ibid. (quoting State v. Williams, 113 N.J. 393, 446, 550 A.2d 1172 (1988). Therefore, we must now *297 determine whether these prosecutorial improprieties led to an unjust verdict with respect to defendant's felony murder conviction.
In evaluating whether a prosecutor's misconduct requires the reversal of a defendant's conviction, the reviewing court must determine whether "the conduct was so egregious that it deprived [the] defendant of a fair trial." State v. Ramseur, 106 N.J. 123, 322, 524 A.2d 188 (1987). Thus, the court must consider the alleged improprieties in the context of the whole trial rather than in isolation. See State v. Marshall, 123 N.J. 1, 153, 586 A.2d 85 (1991). Since such an inquiry focuses not only upon the prosecutor's misconduct, but also its likely effect upon the outcome of the trial, see State v. Williams, supra, 113 N.J. at 446, 550 A.2d 1172, a showing of prosecutorial misconduct does not require the reversal of all of a defendant's convictions if the prejudicial impact of the misconduct does not extend to every charge. State v. Pindale, 249 N.J. Super. 266, 289-90, 592 A.2d 300 (App.Div. 1991).
Defendant never disputed that he was guilty of felony murder. Indeed, defendant's position throughout the trial, obviously designed to avoid the death penalty, was that he was innocent of purposeful or knowing murder because he did not intend to fire the weapon which discharged during the robbery, but that he was guilty of felony murder. Thus, defense counsel argued in his summation:
This is a Court of law and we ask you to follow the law, to examine the facts, to look at the evidence, if it is even necessary for you to do that, and come to a conclusion that's deserving in this case, that will penalize the offender, that will serve justice, and find Mr. Pennington guilty of the second count as provided by the State of New Jersey, a felony murder, a killing that occurred during the commission of a robbery, because that's, in fact, what he did.
That's, in fact, what he has admitted from the time he was arrested right in the beginning. He made no excuses.... He never denied this.
The prosecutor's improprieties were directed at dissuading the jury from returning the felony murder verdict sought by defendant and persuading it to instead find him guilty of capital murder. As the Supreme Court noted, "[i]n his closing remarks, *298 the prosecutor implied that the jury would `insult' the victim and `dishonor' the State's witnesses if it accepted defendant's version of the facts and did not find him guilty of capital murder." 119 N.J. at 568, 575 A.2d 435. The prosecutor also implied in his summation that the jury would violate its oath if it found defendant guilty of only felony murder rather than capital murder:
And so we come to the end. We come to the time for the truth and maybe you still have in your mind that question: Why is the truth so necessary? Why * * * do I have to face perhaps a hard question and find him guilty of purposeful or knowing murder? Why can't I just take the easy way out? Why can't I accept the [defendant's] invitation [to convict defendant of felony murder]?
I could tell you, and I will, that it is the law. But you may say to me, the law is only cold words on cold paper, and you will not have gotten the full understanding. I could say to you, and I will, that is your oath.

* * * * * * * *
Consider your oath, not as old words and cold paper, but as a warm and solemn obligation to tell the truth, the obligation of flesh and blood to flesh and blood.
[119 N.J. at 575, 575 A.2d 435 (emphasis added by Supreme Court.]
Similarly, when the prosecutor implied that defendant was a professional robber who had experience using a gun, his evident purpose was to discredit defendant's pre-trial statement that the shooting was an accidental reflexive action. Likewise, the various derogatory terms used by the prosecutor to describe defendant were manifestly designed to inflame the jury into returning a guilty verdict for purposeful or knowing murder so that the State could proceed to a death penalty hearing.
Based upon its review of the evidence presented at trial and the defense strategy, the Supreme Court observed:
On the evidence, it was virtually a foregone conclusion that defendant would be convicted of some kind of homicide. Defendant did not dispute that he shot the victim in the course of a robbery.
[119 N.J. at 570-71, 575 A.2d 435.]
Defendant suggests that but for the prosecutorial improprieties the jury might have found defendant guilty of only a lesser included offense of aggravated or reckless manslaughter. See N.J.S.A. 2C:11-4a; N.J.S.A. 2C:11-4b(1). However, manslaughter *299 is not a lesser included offense of felony murder. See State v. Crisantos, 102 N.J. 265, 271-72 n. 7, 508 A.2d 167 (1986). Consequently, the jury's only options regarding the charge of felony murder were to convict defendant or to acquit him outright. Indeed, even if the jury found that defendant fired the gun recklessly without intending to shoot the victim, see 119 N.J. at 562, 575 A.2d 435, it still would have been required to find him guilty of felony murder. See State v. Martin, 119 N.J. 2, 19-34, 573 A.2d 1359 (1990); see also Vertner v. State, 272 Ind. 550, 400 N.E.2d 134, 135 (1980). Moreover, in urging the jury in his summation to convict defendant of felony murder, defense counsel clearly recognized that there was no realistic possibility defendant would be acquitted of this offense. Therefore, we are satisfied that the prosecutorial misconduct did not contribute to the jury's guilty verdict with respect to felony murder. See State v. Marshall, supra, 123 N.J. at 161, 586 A.2d 85 (Prosecutor's misconduct viewed as harmless error where the improper remarks were not focused on "a critical and contested issue of fact.").
Affirmed.[2]
NOTES
[1] Several of the other alleged errors raised by defendant in his original appeal from his conviction for capital murder, such as the trial court's decision to permit the State to use defendant's prior convictions to impeach his credibility and the alleged ineffective assistance of trial counsel, could also have been raised with respect to defendant's conviction for felony murder. However, these points were rejected by the Supreme Court. 119 N.J. at 585-87, 590-94, 575 A.2d 435.
[2] The judgment of conviction entered upon defendant's resentencing does not include any disposition of the charge of purposeful or knowing murder. Based on the State's representation that it would not retry defendant for this offense if the trial court unmerged his conviction for felony murder, defendant's conviction for purposeful or knowing murder should now be vacated.